UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| EMELDA EDINBURGH | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 10-613 |
| | * | |
| AMERICAN SECURITY INSURANCE COMPANY | * | SECTION "L"(2) |


ORDER & REASONS

Before the Court is Defendant American Security Insurance Co.'s Motion to Dismiss for Lack of Jurisdiction (Rec. Doc. No. 10). The Court having reviewed the submitted memoranda and the applicable law is now ready to rule. For the following reasons, Defendant's Motion to Dismiss is denied.

I. BACKGROUND

This case involves a claim for damages sustained to the home of Plaintiff Emelda Edinburgh as a result of Hurricane Katrina. Plaintiff originally brought her claims together with numerous other plaintiffs in *Abadie v. Aegis Security Insurance Co.* (Case No. 06-5164), a case which sought to proceed as a class action. Her claims were subsequently consolidated with the levee breach litigation, *In re Katrina Canal Breaches Consolidated Litigation* (Case No. 05-4182), before being severed into *Adams v. American Security Insurance Co.* (Case No. 09-2609). The present action was severed from *Adams* pursuant to a severance order entered in January 2010. In her individual complaint, filed in February 2010, Plaintiff asserts that this Court has subject matter jurisdiction over her case under 28 U.S.C. § 1332(a), which confers diversity jurisdiction on the federal district courts. *See* Pl.'s Compl. para. III (Rec. Doc. No. 1).

1

On August 19, 2010, Defendant American Security Insurance Co. filed the present Motion to Dismiss for Lack of Jurisdiction (Rec. Doc. No. 10). Defendant argues that this Court does not have subject-matter jurisdiction over Plaintiff's case because the amount-in-controversy requirement is not met. Defendant contends that, in a claim based on recovery under an insurance policy, the amount in controversy is the lesser of the value of the claim under the policy or the value of the policy limit. In this case, the value of the dwelling policy is $61,000. Defendant also avers that Plaintiff has not presented evidence indicating that she would be entitled to damages, penalties, or attorney's fees. Defendant asserts that Plaintiff has thereby not shown that her claims exceed $75,000.

Plaintiff opposes Defendant's motion on two grounds. First, she argues that she satisfied the jurisdictional requirements at the time that she brought her claim in *Abadie*. Second, she argues that the various extra-contractual damages, penalties, and attorney's fees she seeks under Louisiana law puts her above the jurisdictional requirement.

## II. LAW AND ANALYSIS

### a. Standard of Review

A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can present either a facial attack or a factual attack. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "A 'factual attack,' however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered." *Id.* When

presented with a factual attack, a district court must "decide for itself the factual issues which determine jurisdiction." *Williamson v. Tucker*, 545 F.2d 404, 413 (5th Cir. 1981). In other words, "the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). A court's disposition of a motion to dismiss for lack of subject-matter jurisdiction may thus rest "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "The burden of proof for a Rule (12)(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### b. Amount-in-Controversy Requirement

Federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). As a threshold matter, Plaintiff urges the Court to look to the time when she originally brought her claim -- that is, when Plaintiff filed suit in *Abadie* -- to determine whether the present action satisfies these jurisdictional requirements. Plaintiff, in other words, contends that the subsequent severance of her claims has no impact on the jurisdictional inquiry. This is incorrect. As the Fifth Circuit has explained, "[i]n assessing whether [there is] subject matter jurisdiction, we generally look to the time at which the action commenced." *Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 431-32 (5th Cir. 2005) (citing *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir.1994)). "However, a severed action must have an independent jurisdictional basis." *Id.* (citing *United States v. O'Neil*,

3

709 F.2d 361, 375 (5th Cir.1983)). Accordingly, this Court must "look to the point at which [this] action was severed" from *Adams* to determine whether the present action satisfies the jurisdictional requirements. *Id.* at 432.

In general, "[i]n order for a federal court to decline jurisdiction, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). The Fifth Circuit has held, however, that this "legal certainty" test applies only in the "typical diversity situation" where a plaintiff expressly alleges damages that exceed the jurisdictional amount. *Id.*; *see also St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (noting that the legal certainty test "has limited utility – in fact is inapplicable – when the plaintiff has alleged an indeterminate amount of damages"). Where a plaintiff does allege a specific amount of damages, that "sum . . . controls if the claim is apparently made in good faith." *St. Paul Mercury*, 303 U.S. at 288.

The inquiry is different "when a complaint does not allege a specific amount of damages." *St. Paul Reinsurance*, 134 F.3d at 1253. In such a case, "the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Id.* (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). "The district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount." *Id.* (quoting *Allen*, 63 F.3d at 1336). If it is not facially apparent from the complaint that the claims exceed $75,000, the court will look to "'summary judgment-type' evidence to ascertain the amount in controversy." *Id.* at 1253 (quoting *Allen*, 63 F.3d at 1336). In this case, Plaintiff has not alleged a specific

amount of damages in her Complaint. As such, the Court is to determine whether Plaintiff has

pled factual allegations or otherwise proffered evidence that, together, indicate that the amount

that is in controversy more likely than not exceeds $75,000.

Plaintiff in this case is primarily seeking to recover payments under various insurance

policies. Where a plaintiff seeks such a recovery, the amount in controversy is generally the

lesser of the value of the claim under the policy or the value of the policy limit. *See Hartford Ins.*

*Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002); *see also Payne v. State Farm Mut.*

*Auto. Ins. Co.*, 266 F.2d 63, 65 (5th Cir. 1959). Plaintiff's Complaint does not specify either of

these values, but Plaintiff and Defendant agree that the insurance policy with respect to

Plaintiff's dwelling limits Plaintiff's recovery to $61,000. *See* Def.'s Ex. A at 4 (Rec. Doc. No.

10-3); Pl.'s Ex. A at 1 (Rec. Doc. No. 13-1). Plaintiff has also proffered evidence that she is

entitled to recovery under policy provisions for extensions and contents in the amount of

$11,078. *See* Pl.'s Ex. A at 1 (Rec. Doc. No. 13-1). This too remains undisputed as Defendant

has not sought to controvert Plaintiff's evidence. The amount that Plaintiff seeks to recover

under the various policies in this case is thus $72,078.

Although this is in and of itself below the jurisdictional amount, Plaintiff argues that she

nonetheless satisfies the amount-in-controversy requirement because she seeks several other

forms of relief – namely, attorney's fees and penalties under La. Rev. Stat. Ann. § 22:658(B)(1),

*renumbered as* La. Rev. Stat. Ann. § 22:1892(B)(1), and damages and penalties under La. Rev.

Stat. Ann. § 22:1220(A), (C), *renumbered as* La. Rev. Stat. Ann. § 22:1973(A), (C). The latter,

Plaintiff avers, includes damages for mental anguish, which the Fifth Circuit has held to be

available under Section 22:1220 (now renumbered as Section 22:1973). *See Dickerson v.*

5

*Lexington Ins. Co.*, 556 F.3d 290, 304 (5th Cir. 2009). Plaintiff's argument finds support in the law. Indeed, the Fifth Circuit has held that these forms of relief are to be considered in determining the amount in controversy. *See, e.g.*, *St. Paul Reinsurance*, 134 F.3d at 1253 ("[I]n addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are *inter alia* penalties, statutory damages, and punitive damages--just not interest or costs."). The question, then, is whether she has pled factual allegations in her Complaint or otherwise proffered evidence indicating that her claim will more likely than not encompass these extra-contractual forms of relief.

Under La. Rev. Stat. Ann. § 22:658(B)(1), *renumbered as* La. Rev. Stat. Ann. § 22:1892(B)(1), Plaintiff can recover attorney's fees and penalties if Defendant's failure to make an insurance payment within 30 days of the receipt of her proof of loss was "arbitrary, capricious, or without probable cause." Similarly, Plaintiff can obtain damages and penalties under La. Rev. Stat. Ann. § 22:1220(A), (C), *renumbered as* La. Rev. Stat. Ann. § 22:1973(A), (C), if Defendant breached its "duty of good faith and fair dealing." The statute specifies five acts that can constitute such a breach, including a failure to pay a claim within 60 days of the receipt of proof of loss that is "arbitrary, capricious, or without good cause." *Id.* § 22:1220 (B)(5), (6).

The Louisiana Supreme Court has recognized that the duty fo pay under these two provisions is "virtually identical." *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 174 (La. 2000). For a plaintiff to prevail on a claim that a failure to pay within 30 or 60 days was arbitrary or capricious, she must show that during that time, the insurer did not have a "substantial,

reasonable, and legitimate" basis upon which to refuse to tender payment. *La. Bag. Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114-1116 (La. 2008). If the plaintiff is able to show that the insurer was arbitrary or capricious in failing to pay, she cannot recover statutory penalties under both provisions. She may instead recover the greater penalty under La. Rev. Stat. Ann. § 22:1220, *renumbered as* La. Rev. Stat. Ann. § 22:1973. *See Calogero*, 753 So.2d at 174 (noting that "[w]here La. R.S. 22:1220 provides the greater penalty, [it] supersedes La. R.S. 22:658 such that [the plaintiff] cannot recover penalties under both statutes"). And she can recover attorney's fees under La. Rev. Stat. Ann. § 22:658, *renumbered as* La. Rev. Stat. Ann. § 22:1892. *See id.*

In this case, the greater penalty under La. Rev. Stat. Ann. § 22:1220(C) would be "two times the damages sustained" and thus amount to $144,156. This figure, when added to Plaintiff's damages proper, would clearly put the claim above the jurisdictional amount of $75,000.[1] The remaining question then is whether she has pled factual allegations or otherwise proffered evidence pointing toward a claim that Defendant's failure to pay was arbitrary or capricious. The answer is in the affirmative. Indeed, although Plaintiff's Complaint contains a number of "conclusional allegations [that] are insufficient to establish jurisdiction," *St. Paul Reinsurance*, 134 F.3d at 1254, she has also made the specific allegations that Defendant "continuously utilized dilatory tactics leading to substantial delays in adjusting [her] claims," Pl.'s Compl. para. XIV, XXVI (Rec. Doc. No. 1), and that Defendant denied her claims "without having a reasonable basis to [do so]," *id.* para. XXXIV.

---

[1] As noted above, Defendant has not sought to controvert Plaintiff's assertion that she is also seeking to recover damages for extensions and contents. If one were to assume that Plaintiff has policy coverage only for her dwelling, the statutory penalty she would obtain for that – $122,000 – would also exceed the jurisdictional amount.

These allegations clearly go toward a claim that Defendant was arbitrary and capricious in its failure to pay. Indeed, as previously noted, the heart of such a claim is that an insurer did not have "a reasonable basis" upon which to refuse to tender payment to an insured. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003). And to the extent that Plaintiff is alleging that Defendant delayed adjusting her claims for the sake of effectuating such a delay, *see* Oxford English Dictionary 2d (1989) (defining "dilatory" as "made for the purpose of . . . deferring decision or action"), it is clear that such a factual averment goes to the claim that Defendant was arbitrary or capricious in its failure to pay. *See Dickerson*, 556 F.3d at 300 (noting that the failure of the insurer to furnish any basis for its "delayed payments and . . . stalling" provided grounds for the finding that it behaved arbitrarily and capriciously). Plaintiff's Complaint thus contains sufficient factual allegations to indicate that the amount that is the subject of controversy in this case includes the extra-contractual forms of relief under the applicable Louisiana statutes. As indicated above, these sums, together with the amount that Plaintiff seeks to otherwise recover, put her above the jurisdictional amount of $75,000. For this reason, Defendant's motion to dismiss for lack of subject-matter jurisdiction must be denied.

Defendant seeks to avoid this conclusion by arguing that Plaintiff has not adduced any evidence that she would be entitled to the aforementioned extra-contractual forms of relief. This argument neglects the fact, however, that a plaintiff can furnish the requisite factual basis for the amount in controversy by setting forth relevant factual allegations in her complaint. Indeed, it is well-settled that such allegations can, of their own force, provide a basis for satisfying the amount-in-controversy requirement and thus ascertaining the court's subject-matter jurisdiction at least at the outset of litigation. *See, e.g.*, *St. Paul Reinsurance*, 134 F.3d at 1253 (holding that

8

where a sum is not expressly alleged in the complaint, the jurisdictional inquiry is at an end if it is "facially apparent" from the plaintiff's complaint that the claim exceeds the jurisdictional amount); *Barrera-Montenegro*, 74 F.3d at 659 (noting that a court can dispose of a motion to dismiss on the basis of "the complaint alone"). Accordingly, the fact that Plaintiff has not yet proffered evidence regarding Defendant's alleged arbitrary and capricious failure to pay is not fatal to her attempt to establish the requisite amount in controversy. As indicated above, she has pled sufficient factual allegations in her Complaint to indicate that the various extra-contractual forms of relief under Louisiana law are at play in this matter.

Defendant's argument regarding the lack of evidence thus appears to constitute an argument against the merits of Plaintiff's case. It should be noted, however, that a court's decision with respect to a motion under Federal Rule of Civil Procedure 12(b)(1) is, and should be, limited to the question of subject-matter jurisdiction, and the merits of the case are to be left unaddressed. After all, it is the very fact that a motion under "Rule 12(b)(1) is not on the merits" that explains why a dismissal for lack of subject-matter jurisdiction "cannot have a res judicata effect." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1013 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996)); *accord Ramming*, 281 F.3d at 161 ("[A] court's dismissal of a plaintiff's case because [of the lack of] subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction."). To the extent that Defendant urges the Court to address the merits of Plaintiff's claims in the context of a motion to dismiss for lack of subject-matter jurisdiction, the Court must decline that invitation.

To be sure, there are times at which a court's consideration of whether it has subject-matter jurisdiction inevitably involves an examination of the merits of a plaintiff's claim. In such cases, "issues of jurisdictional fact are [so] intermeshed with the merits of a case [that] 'it is impossible to decide one without the other.'"" *Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1172 (5th Cir. 1987) (quoting *McBeath v. Inter-Am. Citizens for Decency Comm.*, 374 F.2d 359, 363 (5th Cir. 1967)). Although the Fifth Circuit has suggested that the merits of a claim and the amount in controversy are generally distinct issues, *see id.* at 1172 n.3 (noting that "jurisdiction and merits are separable issues" where the question is "whether $10,000 is actually in controversy in a diversity case"),[2] the case at bar may indeed be one in which the merits of the claims are inextricably bound to the question of whether the amount-in-controversy requirement is satisfied. Indeed, the aforementioned discussion indicates that Plaintiff's recovery of the various extra-contractual forms of relief – and her ability to meet the requirement – hinges on her claim that Defendant acted arbitrary and capriciously in handling her insurance claims.

Even so, this only points to an alternative reason why Defendant's motion to dismiss for lack of subject-matter jurisdiction must be denied. Indeed, the courts have widely recognized that where the question of jurisdiction is intertwined with the merits of the case, the proper course of action is to reserve for a later proceeding both the jurisdictional question, *see, e.g.*, *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (noting that where there is an

---

[2] At the time that the Fifth Circuit referred to the figure of $10,000, that was the jurisdictional amount set forth in the diversity jurisdiction statute. *See* Act of July 25, 1958, Pub. L. No. 85-554, 72 Stat. 415, 415. The Fifth Circuit's statement can thus be taken to mean that whether the amount-in-controversy requirement is satisfied is generally a question that can be answered without reaching the merits of the case. The jurisdictional amount was ultimately raised to $75,000 in 1996. *See* The Federal Courts Improvement Act, Pub. L. No. 104-317, § 205, 110 Stat. 3847, 3850 (1996).

"intertwined attack" on jurisdiction and merits, "resolution of the jurisdictional issue on a 12(b)(1) motion [is] improper"),[3] and the merits of the case, *see, e.g.*, *Continental Cas. Co. v. Dep't of Highways, State of La.*, 379 F.2d 673, 675 (5th Cir. 1967) ("[W]hen the issue of the jurisdictional amount is intertwined with the merits of the case, courts should be careful not to decide the merits, under the guise of determining jurisdiction, without the ordinary incidents of a trial.").[4]

The reason for postponing the jurisdictional question is plain. To the extent that the jurisdictional question and the merits are intertwined, a plaintiff who has yet to undertake discovery almost certainly has not had the chance to fully ascertain the jurisdictional facts. Under these circumstances, the Fifth Circuit has indicated, "the district court must give the plaintiff . . . a chance to discover the facts necessary to establish jurisdiction." *Williamson*, 645 F.2d at 414; *accord Chatham Condominium Ass'ns v. Century Village, Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979) (cautioning against the "dismissal for lack of subject matter jurisdiction . . . prior to giving the plaintiff ample opportunity for discovery" in cases where the question of

_____

[3] The cases cited herein address different jurisdictional issues, including standing, personal jurisdiction, and subject-matter jurisdiction. The Fifth Circuit has suggested that in cases in which any one of these jurisdictional issues are intertwined with the merits of the case, "'the principles to be applied in each instance are substantially similar.'" *McBeath*, 374 F.2d at 363 (quoting *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965)).

[4] In some cases, the Fifth Circuit has indicated that the courts are not merely to *reserve* the jurisdictional question for a later determination, but rather to *assume* subject-matter jurisdiction and resolve the matter on the merits. *See, e.g.*, *Montez*, 392 F.3d at 150 ("[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits."). It is unclear whether a court may do so in light of *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), a case in which the Supreme Court rejected the notion of "hypothetical" subject-matter jurisdiction, *see id.* at 93-94.

11

jurisdiction and the merits of the case are intertwined). The need to provide some opportunity for the discovery of jurisdictional facts provides one reason why in these types of cases, "[a] district court may postpone a decision on the question of subject matter jurisdiction." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004).[5]

The question of subject-matter jurisdiction need not be reserved "until all discovery contemplated by the plaintiff has been accomplished." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 n.4 (5th Cir. 1985). But the district court must not "den[y] 'an opportunity for discovery . . . that is appropriate to the nature of the motion to dismiss.'" *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990) (quoting *Williamson*, 645 F.2d at 414). Thus, while a district court may choose to address a jurisdictional question at a pretrial evidentiary hearing, *e.g.*, *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008), it may be more appropriate to address the jurisdictional question on a motion for summary judgment or at trial, *see, e.g.*, *Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989). In particular, "it is often 'preferable that [the jurisdictional] determination be made at trial'" because this ensures not only that "'a plaintiff may present his case in a coherent, orderly fashion,'" *Walk Haydel*, 517 F.3d at 241 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977)), but also that "adequate time is given to complete discovery and all the jurisdictional facts are fully developed," *Chatham Condominium Ass'ns*, 597 F.2d at 1012.

---

[5] Once the jurisdictional question is postponed, it is also inevitable that the court must defer any examination of the merits of the case. "[A] federal court generally may not rule on the merits of a case without first determining that it has [subject matter] jurisdiction." *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing *Steel Co.*, 523 U.S. at 93-102).

In light of all of this, it is clear that while Defendant may be correct to draw the Court's attention to the merits of Plaintiff's claim in the context of a motion to dismiss for lack of subject-matter jurisdiction, doing so only illuminates another reason why this Court must deny Defendant's motion. Indeed, to the extent that the question of jurisdiction and the merits of Plaintiff's claim are inextricably bound to one another in this case, the jurisdictional question must be reserved for a later proceeding in order to afford Plaintiff the opportunity to undertake jurisdictional discovery. The fact that Plaintiff has not, at this stage of the litigation, gone beyond her Complaint to proffer evidence that Defendant was arbitrary and capricious in its handling of her insurance claims does not warrant the immediate dismissal of her case. *See Montez*, 392 F.3d at 150; *Williamson*, 645 F.2d at 414.

Regardless of whether the jurisdictional question and the merits of the claim are intertwined in this matter, it should be clear that the determination of whether this Court has subject-matter jurisdiction over the instant case is not a one-time event. The Federal Rules of Civil Procedure do not contemplate a limit as to when a court can entertain a challenge to its subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at *any time* that it lacks subject-matter jurisdiction, the court must dismiss the action.") (emphasis added). And the Supreme Court has long held that an objection to a court's subject-matter jurisdiction can be made "at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). In other words, "even if the defense [of the lack of subject-matter jurisdiction] is overruled, stricken, or excluded by the district court, it may be reasserted at any time in the action." Wright & Miller, *supra*, § 1350; *accord Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). In this case, then, if discovery subsequently reveals that

Plaintiff cannot meet the amount-in-controversy requirement, the question of subject-matter jurisdiction can and should certainly be revisited.

Finally, the Court takes note of the fact that other judges of this Court have reviewed similar cases, which have also been severed from *Adams*, and have reached a different conclusion with respect to the issue of whether the amount-in-controversy requirement has been satisfied. *See, e.g.*, *Duvernay v. Am. Sec. Ins. Co.*, No. 10-612, 2010 WL 2674588 (E.D. La. 2010) (Berrigan, J.); *Washington v. Am. Sec. Ins. Co.*, No. 10-685, Rec. Doc. No. 8 (E.D. La. 2010) (Lemmon, J.). It is important to note that these decisions and the Court's determination in this case share the same baseline recognition -- that is, where a complaint does not expressly allege a sum that exceeds the jurisdictional amount, factual allegations must be pled, and evidence may have to be proffered, in order to establish the requisite jurisdictional amount. What appears to explain the divergent outcomes in these cases is a difference in perspective regarding the level of factual specificity that is relevant in determining the sufficiency of factual allegations and proffered evidence. Because this difference seems dispositive, the Court finds that it is important to articulate it and to explain it.

It is well-settled that the Federal Constitution and the Rules of Decision Act, 28 U.S.C. § 1652, require federal courts that sit in diversity to observe and respect substantive state law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938). And a federal court must do the same when it is to determine, in the first instance, whether it is to sit in diversity and adjudicate the merits of a case. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (noting that in ascertaining the amount in controversy, "the federal courts must . . . look to state law to determine the nature and extent of the right to be enforced"). Substantive state law includes "the

factual elements which must be found to impose liability and fix damages." *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998) (internal citations omitted).

With respect to the type of claim that is at issue in this case, the Louisiana Supreme Court has held that "proof of specific acts or proof of the insurer's state of mind is generally not required to establish that conduct is arbitrary, capricious or without probable cause." *La. Bag. Co.*, 999 So.2d at 1121 (internal citations omitted). Instead, under Louisiana law, "it is 'sufficient that the vexatious character of the insurer's refusal to pay can reasonably be found from a general survey of all the facts in evidence, specific evidence thereof being not necessary.'" *Id.* (quoting 14 Couch on Insurance § 204:108 (3d ed. 1995)). Louisiana law thus regards as inconsequential the fact that a plaintiff "fail[s] to identify any specific conduct by [the insurer] that was arbitrary, capricious or without probable cause." *Id.*

These instructions leave no doubt that in this case, Plaintiff's allegations that Defendant "continuously utilized dilatory tactics leading to substantial delays in adjusting [her] claims," Pl.'s Compl. para. XIV, XXVI (Rec. Doc. No. 1), and that it denied her claims "without having a reasonable basis to [do so]," *id.* para. XXXIV, are more than sufficient to indicate that the various forms of extra-contractual relief are at play in this case. As previously noted, the central fact that must be established with respect to a claim that an insurer acted arbitrary and capriciously is the fact that the insurer had no reasonable basis for refusing to adequately adjust an insurance claim. *See La. Bag.*, 999 So.2d at 1114-16. And given that a plaintiff need not "identify any specific conduct [that is] arbitrary, capricious or without probable cause," *id.* at 1121, Plaintiff's specific allegation that Defendant "continuously utilized dilatory tactics" is clearly one that goes above and beyond what Louisiana law requires.

15

In their complaints, the plaintiffs in *Duvernay* and *Washington* made the same allegations as Plaintiff did in this case, but the Court in those cases nonetheless found that the plaintiffs did not provide an adequate factual basis indicating that they were seeking the various forms of extra-contractual relief under Louisiana law. In doing so, those decisions seem to indicate that plaintiffs in these types of cases should plead more detailed factual allegations, and identify specific conduct on the part of the insurer, to furnish the factual basis for meeting the amount in controversy requirement. Doing so, however, risks reading into Louisiana law a requirement that the Louisiana Supreme Court has itself rejected. Because "it is not our place within the constitutional firmament to conjure up a new legal paradigm to replace one already fashioned by our learned colleagues in the state judiciary," *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1283 (5th Cir. 1994), we must be careful not to do so. The general rule that a plaintiff must plead factual allegations or otherwise provide evidence in order to show that she satisfies the amount-in-controversy requirement must not be applied in such a way as to require a plaintiff to plead facts or proffer evidence that the relevant substantive state law itself does not require. This is especially so where, as it may very well be in this and other similar cases, the merits of a plaintiff's claim and the question of subject-matter jurisdiction are inextricably bound to one another, and a court's determination of the jurisdictional question is, in effect, a determination of the merits of the case.

## III. CONCLUSION

"[T]he complaint supplemented by undisputed facts evidenced in the record" indicates that Plaintiff has thus far met the amount-in-controversy requirement. *Barrera-Montenegro*, 74

F.3d at 659. Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of

Jurisdiction (Rec. Doc. No. 10) is hereby **DENIED**.

New Orleans, Louisiana, this 27th day of September, 2010.

_____

UNITED STATES DISTRICT JUDGE